

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| CAMERON JULIAS XAVIER BANKS SR., §<br>Plaintiff, §<br>§<br>vs. §<br>§<br>VITALCORE HEALTH STRATEGIES LLC, §<br>JASON LOY, CHELSEY ANDERSON, §<br>DR. PFEIFFER, APRN DONNA SCUDERI, §<br>APRN NATALIE BELL, and APRN §<br>UNKNOWN KING, §<br>Defendants. § | Civil Action No.: 0:23-5819-MGL |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT,
AND GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTIONS TO AMEND**

Plaintiff Cameron Julias Xavier Banks Sr. (Banks), a pretrial detainee who is representing himself, brought this civil action against the above-named Defendants. He asserts state law claims and alleges violations of his constitutional rights under 42 U.S.C. § 1983 (Section 1983).

Banks is currently housed at the Sheriff Al Cannon Detention Center (ACDC) in North Charleston, South Carolina. Defendant VitalCore Health Strategies LLC (VitalCore) contracts with ACDC to provide medical care to detainees. Defendants Jason Loy (Loy), Chelsey Anderson (Anderson), Dr. Pfeiffer (Pfeiffer), APRN Donna Scuderi (Scuderi), APRN Natalie Bell (Bell), and APRN Unknown King (King) (together with VitalCore, Defendants) are VitalCore providers.

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting the Court grant in part and deny in part Defendants' motion for summary judgment, deny Banks's motions for summary judgment, deny Banks's motions for default judgment, and grant in part and deny in part Banks's motions to amend. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on July 1, 2025. Defendants objected on July 15, 2025, and Banks replied on August 15, 2025. The Court has carefully reviewed Defendants' objections but holds them to be without merit. It will therefore enter judgment accordingly.

Banks was previously in the custody of the Bureau of Prisons (BOP). He was admitted to ACDC on October 13, 2023, and has since been treated by multiple VitalCore providers, including Loy, Pfeiffer, Scuderi, Bell, and Stephen Keen (Keen), who he mistakenly named as King.

During the admission process at ACDC, Banks informed the intake nurse he had chronic kidney disease (CKD) and advised he was unable to take non-steroidal anti-inflammatory drugs (NSAIDs). But, Banks's initial health assessment lists Naproxen, an NSAID, as one of his current medications. The assessment further indicates Banks's CKD-related hypertension is being treated with Lisinopril.

On October 14, 2023, VitalCore provider William Pursley (Pursley) prescribed Banks an unknown medication for his neck pain and neuropathy. Five days later, Banks discovered the medication was Naproxen. Banks thus filed a sick call request, reiterating his CKD and requesting a non-NSAID substitute.

At some point during the week of October 16, 2023, Banks began to experience genital bleeding, which he believed was caused by his use of Naproxen. Banks informed Loy, evidently to no avail. Bell, however, replaced the Naproxen on October 21, 2023.

On October 23, 2023, ACDC received Banks's medical records from the BOP. The records indicate Banks was prescribed Naproxen in 2021, but he was thereafter diagnosed with Stage II CKD, purportedly caused by NSAID use. As of September 2023, Banks's condition had advanced to Stage II/III. So, Banks's nephrologist prescribed him Lisinopril for CKD-related hypertension and told him to avoid using NSAIDs.

Between October and December 2023, Banks filed numerous grievances with VitalCore, stating he continued to suffer from genital bleeding.

On November 12, 2023, VitalCore ceased administering Banks's Lisinopril.

Banks complained of a splitting headache on December 1, 2023. The following day, Banks confronted Bell about his genital bleeding. Bell was unable to see any blood on Banks's clothing. Banks, however, attests ACDC had just replaced his blood-stained boxers. And, during the encounter, Banks's bleeding genitals were inside a sock and secured underneath his boxers, thermal bottoms, and jail-issued jumper.

On December 3, 2023, Pfeiffer found Banks's blood pressure was within normal range, rendering Lisinopril unnecessary.

At the beginning of January 2024, Banks's genital bleeding subsided. Nevertheless, on January 4, 2024, Scuderi prescribed him Ibuprofen, another NSAID. Banks later filed three grievances, stating he was unable to urinate. Pursley finally substituted the Ibuprofen on January 20, 2024.

Based upon the foregoing, Banks filed this lawsuit. The Magistrate Judge construed his complaint as asserting deliberate indifference claims against VitalCore, Loy, Pfeiffer, Scuderi, Bell, and King; a race and color discrimination claim against VitalCore; and supervisory liability and intentional infliction of emotional distress (IIED) claims against Loy. Because the Magistrate Judge failed to construe any claims against Anderson, the Court will dismiss her as a Defendant.

The parties filed cross-motions for summary judgment, and Banks filed motions for default judgment as to King. Banks also filed motions to amend, in which he requests the Court rename King as "APRN Stephen Keen" and Pfeiffer as "Dr. John A. Pfeiffer" and permit him to file an amended complaint.

As the Court stated above, the Magistrate Judge recommends the Court grant in part and deny in part Defendants' motion for summary judgment, deny Banks's motions for summary judgment, deny Banks's motions for default judgment, and grant in part and deny in part Banks's motions to amend. Defendants, however, advance two objections, both of which relate to Banks's deliberate indifference claims.

To prevail on a deliberate indifference claim, a pretrial detainee must demonstrate "(1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant[s] intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant[s] knew or should have known (a) that the detainee had that

4

condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023).

Here, Defendants argue Banks has failed to establish all four of the *Short* elements. The Court will address each element in turn.

As to the first element, the Fourth Circuit has explained "a serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Defendants argue CKD "does not constitute a medical condition or injury that pose[s] a substantial risk of serious harm." Defendants' Objections at 5 (internal quotation marks omitted). Specifically, Defendants assert CKD "is a condition [that] may require medical treatment or a doctor's attention, which was provided to the plaintiff in this case." *Id.*

Banks, on the other hand, contends CKD poses a substantial risk of serious harm because it could become fatal if untreated, and his pain and genital bleeding obviously necessitate medical care.

Based on Banks's medical records, which have been presented as evidence by both parties, the Court determines he suffers from CKD and CKD-related hypertension. His nephrologist recommended a treatment plan, which includes managing his blood pressure through Lisinopril and avoiding NSAIDs. The Court is therefore convinced Banks has "a medical condition . . . that pose[s] a substantial risk of serious harm[.]" *Short*, 87 F.4th at 611.

Turning to the second *Short* element, Defendants maintain Banks "has failed to present any evidence [they] intentionally, knowingly, or recklessly acted or failed to act." Defendants'

5

Objections at 5 (internal quotation marks omitted). They argue the fact Banks was prescribed Naproxen while in BOP custody rendered it reasonable for Pursley to prescribe the medication upon Banks's admission to ACDC. Defendants further emphasize VitalCore providers assessed Banks twelve times between October 2023 and April 2024, and they referred him for medical imaging and studies on four separate occasions.

Banks, on the other hand, insists it was unreasonable for Pursley and Scuderi to prescribe him NSAIDs because his medical records indicate his condition may have been caused by NSAID use and advise against further use. Banks further notes he submitted over eighteen sick calls and medical grievances about his genital bleeding, which he claims was caused by Naproxen, but Defendants unreasonably declined to address this issue. Moreover, he avers Defendants continue to recklessly disregard his medical needs by withholding his Lisinopril.

Regarding the initial prescription of Naproxen in October 2023, it appears ACDC had yet to receive Banks's medical records from the BOP. Banks attests he informed the intake nurse he was unable to take NSAIDs. The initial health assessment, however, fails to note this limitation and lists Naproxen as one of his current medications. Thus, it remains unclear whether Pursley—who had yet to receive Banks's medical records from the BOP and was presumably relying on the initial health assessment—intentionally, knowingly, or recklessly prescribed Naproxen.

After taking Naproxen for one week, Banks told Loy and Keen he was experiencing genital bleeding. But, his complaints went unaddressed for forty-three days.

On November 12, 2023, VitalCore ceased administering Banks's Lisinopril. Although Banks complained of a splitting headache on December 1, 2023, Defendants evidently neglected to assess his blood pressure at this juncture.

Even when Bell assessed Banks on December 3, 2023, Bell appears to have conducted only a visual examination, noting an absence of blood on his clothing.  Banks, however, attests his blood-stained boxers had just been replaced by ACDC, and his bleeding genitals were covered by a sock and buried underneath multiple layers of clothing.

Three days after Banks's genital bleeding subsided, Scuderi prescribed him Ibuprofen, another NSAID.  At this point, though, Defendants possessed Banks's medical records, which advised against using NSAIDs.

For at least four days while taking Ibuprofen, Banks was unable to urinate.  And, again, his complaints went unaddressed for some time.

Although Defendants cite various medical interventions and referrals Banks has received while at ACDC, such efforts deal almost exclusively with a separate, unrelated condition.  Indeed, neither the interventions nor the referrals addressed his persistent genital bleeding, hypertension, and inability to urinate.

For all these reasons, the Court determines there is a genuine dispute of material fact as to whether Defendants "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk" posed by Banks's CKD and related hypertension.  *Short*, 87 F.4th at 611.

As for the third *Short* element, it appears undisputed Defendants "knew or should have known . . . [Banks] had [CKD and resulting hypertension]" *Id.*  But, the parties contest whether Defendants "knew or should have known . . . [their] action or inaction posed an unjustifiably high risk of harm[.]" *Id.*

Defendants assert "no unjustifiably high risk of harm existed, and the record demonstrates [they] provided [Banks] adequate medical care."  Defendants' Objections at 8 (internal quotation marks omitted).  They argue "three weeks of [an NSAID] does not pose an unjustifiably high risk

7

of harm[,]" and maintain "kidney function tests in 2024 . . . showed no appreciable change to [Banks's] condition." *Id.* (internal quotation marks omitted).

Banks, however, posits Defendants' actions and inactions presented an unjustifiably high risk of harm as evidenced by his genital bleeding, hypertension, and inability to urinate.

As the Court indicated above, while taking Naproxen and Ibuprofen, Banks experienced genital bleeding for seventy-two days and urinary retention for four days. Also, after Defendants ceased administering Banks's Lisinopril, he suffered from a splitting headache and hypertension. And, Defendants continue to withhold the medication notwithstanding Banks's medical records stating blood pressure management is the primary method by which to slow the progression of his CKD.

For all these reasons, the Court holds a genuine issue of material fact remains as to whether Defendants "knew or should have known . . . [their] action or inaction posed an unjustifiably high risk of harm[.]" *Short*, 87 F.4th at 611.

Finally, regarding the fourth *Short* element, Defendants contend Banks has neglected to demonstrate "the brief prescription of NSAIDs caused him any damages." Defendants' Objections at 6.

Banks, on the other hand, asserts Defendants' withholding of his Lisinopril caused him to suffer from hypertension, renal damage, and disease progression. For support, Banks emphasizes his glomerular filtration rate (GFR) decreased by thirteen levels between November 2024 and May 2025.

Although Defendants' expert testified three-weeks of NSAID use neither affected Banks's kidney, worsened his CKD, nor caused his genital bleeding, Defendants have neglected to refute

8

evidence the Ibuprofen impeded Banks's ability to urinate. Defendants also fail to address the steep decline in Banks's GFR and his hypertensive symptoms.

The Court therefore determines a genuine issue of material fact exists as to whether Banks was harmed as a result of Defendants' actions and inactions.

For all these reasons, the Court will overrule Defendants' first objection.

Turning to Defendants' second objection, they argue "[t]he existence of a policy limiting a detainee's sick calls is not a violation of a constitutional right, and [Banks] has not provided any evidence that such limitation of his access to the sick calls caused a particular injury, especially given he had visits with medical staff or encounters on October 14, October 21, October 23, November 7, November 13, November 18, December 3, December 5, January 4, January 25, January 30, and April 5." Defendants' Objections at 10. The Court, however, is unconvinced.

Banks presents evidence showing he submitted the following sick call request on October 16, 2023:

> I need to see a doctor not a nurse ASAP! The stabbing pain from my [cervical spine] that are herniated and protruding . . . are causing me to have migraines from hell, my vision is blurred and the pain is sho[o]ting through my arms sometimes causing my limbs to be paralyze[d].

Sick Call Request October 16, 2023, at 8:05 p.m. When VitalCore failed to initiate a sick call the following day, Banks responded, "What's the point [in] filling out a sick call request if you all are just going to ignore them! Do[es] anyone in this department realize this is a violation to one[']s [E]ighth [A]mendment right?" Sick Call Inmate Response October 17, 2023, at 3:54 p.m.

Bell finally assessed Banks on October 21, 2023. Two days later, VitalCore formally closed Banks's sick call request and replied, "We are not ignoring requests. We have [seven] days to respond to a request and it is [a lot] of inmates to our small medic[a]l team. We understand you

9

are in pain[,] but we also ask for patience and grace." Sick Call Closing October 23, 2023, at 9:42 p.m.

Banks contends the five-day delay between his submitting the request and Bell's evaluation exacerbated his pain and thus violated his Fourteenth Amendment right to adequate and timely medical care. Although Defendants insinuate deliberate indifference excludes delays in medical treatment, "[a] delay in treatment may constitute deliberate indifference if [it] exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). And, here, Banks has presented circumstantial evidence VitalCore's response policy unnecessarily prolonged his pain. Accordingly, the Court will also overrule Defendants' second objection.

After a thorough review of the Report and the record in this case under the standards set forth above, the Court overrules Defendants' objections, adopts the Report, and incorporates it herein. It is therefore the judgment of the Court Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and Banks's motion for summary judgment is **DENIED**. Specifically, Defendants' motion is granted as to Banks's discrimination, supervisory liability, and IIED claims, which are all dismissed with prejudice, and denied as to his deliberate indifference claims.

Finally, Banks's motions for default judgment are **DENIED**, and his motions to amend are **GRANTED IN PART AND DENIED IN PART**. The Court hereby directs the Clerk of Court to dismiss Anderson from this action and amend the docket to reflect the correct identification of APRN Stephen Keen and Defendant Dr. John A. Pfeiffer.

**IT IS SO ORDERED.**

Signed this 23rd day of September 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

*****
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of their right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.